**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| CENTER FOR FOOD SAFETY, *et al.*, |
| Plaintiffs, |
| v. |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*, |
| Defendants, |
| CORTEVA AGRISCIENCE, LLC, |
| and |
| CROPLIFE AMERICA, |
| Defendant-Intervenors. |

Civil Action No. 23-1633 (CKK)

**MEMORANDUM OPINION**
(March 26, 2024)

Plaintiffs Center for Food Safety, Pesticide Action Network North America, and Alianza Nacional de Campesinas ("Plaintiffs") bring this action against Defendant United States Environmental Protection Agency ("EPA") and EPA Administrator, Michael S. Regan, alleging that the EPA's decisions to renew registrations for herbicides Enlist One and Enlist Duo and to remove restrictions from their product labels violate the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") and the Endangered Species Act ("ESA").

Presently before the Court are the [12] Motion to Intervene by Corteva Agriscience, LLC ("Corteva") and [17] Motion to Intervene by CropLife America ("CropLife").

Corteva seeks to intervene as of right as a defendant in accordance with Federal Rule of Civil Procedure 24(a), or in the alternative, to permissively intervene in accordance with Rule 24(b). Corteva's Mot. at 2. Defendants do not oppose Corteva's motion, *id.* at 3; Plaintiffs also

1

do not oppose the motion, but seek to impose restrictions on intervention, Pl.'s Opp'n at 1.

CropLife likewise seeks to intervene as of right as a defendant in accordance with Federal Rule of Civil Procedure 24(a), or in the alternative, to permissively intervene in accordance with Rule 24(b). CropLife's Mot. at 1. Defendants do not oppose their motion, *id.* at 3; Plaintiffs ask the Court to deny CropLife's motion, Pl.'s Opp'n at 2.

Upon consideration of the motions, the relevant legal authorities, and the record as a whole,[1] the Court finds that Corteva is entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a). Accordingly, the Court shall **GRANT** Corteva's [12] Motion to Intervene. The Court finds that CropLife has not satisfied the requirements for intervention as of right under Rule 24(a), nor do the circumstances warrant permissive intervention under Rule 24(b). Accordingly, the Court shall **DENY** CropLife's [17] Motion to Intervene.

## I.    BACKGROUND

Plaintiffs are nonprofit organizations dedicated to protecting the environment and public health. Compl. ¶ 22. They are challenging the EPA's decisions to renew the registrations for herbicides Enlist One and Enlist Duo and to remove application restrictions from Enlist One and Enlist Duo product labels, arguing that these decisions violate both FIFRA and the ESA. *Id.* ¶ 1.

Enlist One and Enlist Duo are herbicides that contain 2,4-dichlorophenoxyacetic acid

---

[1] The Court's consideration has focused on the following:
- Plaintiffs' Complaint ("Compl."), ECF No, 1;
- Corteva's Motion to Intervene ("Corteva's Mot."), ECF No. 12;
- CropLife's Motion to Intervene ("CropLife's Mot."), ECF No. 17;
- Plaintiffs' Opposition to Corteva and CropLife's Motions to Intervene ("Pls.' Opp'n"), ECF No. 20;
- Corteva's Reply in Support of Motion to Intervene ("Corteva's Reply"), ECF No. 21;
- CropLife's Reply in Support of Motion to Intervene ("CropLife's Reply"), ECF No. 22.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

choline salt ("2,4-D").  *Id.* ¶ 63.  Enlist Duo also contains another active ingredient, glyphosate

dimethylammonium salt ("glyphosate").  *Id.*  Both Enlist products are approved for controlling

weeds in corn, soybean, and cotton operations in thirty-four states.  *Id.* ¶ 64.  Enlist One and Enlist

Duo are made and sold by Corteva, which also sells seeds that are genetically engineered to resist

these Enlist products.  *Id.* ¶ 65.  Plaintiff alleges that the ingredients in Enlist One and Enlist Duo,

and the products themselves, have numerous adverse effects on the environment, including highly

toxic effects on crops, plants, pollinators, and other species.  *Id.* ¶¶ 63, 68–87.  Enlist One and

Enlist Duo have registrations from the EPA.  *Id.* ¶ 115–16.

Generally speaking, before any herbicide or pesticide can be used in the United States, the

EPA must issue a license, or registration, that sets the terms and conditions for that product.  *Id.* ¶

28.  Pursuant to FIFRA, the EPA must make certain determinations—including related to the

product's adverse effects on the environment—before registering or re-registering it.  *Id.* ¶¶ 29–

38.  Additionally, pursuant to the ESA, the EPA must ensure that registration decisions are not

likely to jeopardize the existence of endangered or threatened species or critical habitats.  *Id.* ¶¶

43–44.  This includes a consultation process.  *Id.* ¶¶ 45–57.

In their Complaint, Plaintiffs argue that the EPA's registration decisions for Enlist One and

Enlist Duo were not supported by substantial evidence, claiming that the EPA understated the risks

and costs of its decision, overstated the benefits of Enlist products, and failed to mitigate adverse

environmental risks in violation of FIFRA.  *Id.* at 90–94.  They also argue that these registration

decisions violated the ESA by failing to undertake the necessary consultation process, to prevent

jeopardy and adverse modification of any endangered or threatened species or critical habitats, and

to prevent irreversible commitment of resources.  *Id.* at 94–99.

After Plaintiff filed their Complaint, Corteva filed the pending Motion to Intervene.  As

mentioned above, Corteva is the seller of Enlist products and, therefore, the owner of the challenged registrations.  Corteva's Mot. at 9.

CropLife also filed a Motion to Intervene.  CropLife is a national trade association representing companies that develop and sell pesticide products.  CropLife's Mot. at 11.  Corteva is a member of CropLife; other CropLife members also have registrations for other pesticide products that contain the active ingredients glyphosate and 2,4-D.  *Id.*

## II.    LEGAL STANDARD

### A.  Intervention as of Right

Federal Rule of Civil Procedure 24(a) governs intervention as a matter of right.  That provision requires the Court "[o]n timely motion" to "permit anyone to intervene who… claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  Consistent with this rule, the D.C. Circuit requires putative intervenors to demonstrate "(1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties."  *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (internal citations and quotation marks omitted).

The D.C. Circuit also requires parties seeking to intervene under Rule 24(a)—including putative defendant-intervenors—to demonstrate that they have standing under Article III of the Constitution.  *See Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d

312, 316 (D.C. Cir. 2015); *Fund for Animals*, 322 F.3d at 731–32.  "The standing inquiry for an

intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact,

causation, and redressability." *Crossroads*, 788 F.3d at 316 (citing *Deutsche Bank Nat'l Trust v.

F.D.I.C.*, 717 F.3d 189, 193 (D.C. Cir. 2013)).

### B.  Permissive Intervention

Federal Rule of Civil Procedure 24(b) authorizes permissive intervention for anyone who

files a timely motion and "has a claim or defense that shares with the main action a common

question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  In exercising its discretion to permit

intervention, among other factors, "the court must consider whether the intervention will unduly

delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

### C.  Restrictions on Intervenor's Participation

Once a district court concludes that a party has a right to intervene, the inquiry is not

necessarily at an end.  Even where intervention is a matter of right, district courts may impose

appropriate conditions or restrictions upon the intervenor's participation in the action.  *Fund for

Animals*, 322 F.3d at 737 n. 11 (citing favorably to Fed. R. Civ. P. 24 advisory committee's note

to 1966 amendment); *see also Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383

(1987) (Brennan, J., concurring) ("restrictions on participation may also be placed on an intervenor

of right and on an original party").  The district court's discretion to impose reasonable restrictions

on participation is consonant with its inherent power to manage the litigation before it,

*Beauregard, Inc. v. Sword Servs. LLC*, 107 F.3d 351, 353 (5th Cir. 1997), as well as a necessary

instrument in accommodating the two conflicting goals of intervention: i.e., "to achieve judicial

economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit

from becoming fruitlessly complex or unending," *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir.

1969).

## III.    DISCUSSION

Before the Court are motions to intervene by two entities—Corteva and CropLife—which the Court will address separately.

### A.  Defendant-Intervenor Corteva

Plaintiffs do not oppose Corteva's motion to intervene in this case.  Pl.'s Opp'n at 1. However, they do seek to impose restrictions on Corteva's intervention.  The Court will begin by addressing the requirements for intervention as of right, finding that Corteva has satisfied all requirements.

#### i.    Standing

Before addressing each Rule 24(a) factor, the Court must consider Corteva's standing. *Crossroads*, 788 F.3d at 316 ("[W]here a party tries to intervene as another defendant, we have required it to demonstrate Article III standing[.]").  In order "[t]o establish standing under Article III, a prospective intervenor—like any party—must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Fund for Animals*, 322 F.3d at 732–33.

In a case such as this one, where Corteva's property—its registrations for Enlist One and Enlist Duo—is the object of the action at issue, standing is essentially self-evident.  *See Fund for Animals, Inc.*, 322 F.3d at 733–34.

As for injury in fact, Corteva stands to suffer a substantial economic injury, as the EPA's registration of Enlist One and Enlist Duo grants Corteva licenses to market and sell those products. *See* Corteva's Mot. at 15; *Sierra Club v. Morton*, 405 U.S. 727, 733–34 (1972) ("economic injuries have long been recognized as sufficient to lay the basis for standing").  This economic injury would be traceable to Plaintiff's Complaint because, absent the filing of this lawsuit, Corteva would remain able to market and sell its Enlist products.  *See* Corteva's Mot. at 15–16.  In turn,

redressability is met, as Corteva can prevent the injury by defeating Plaintiffs' challenge.  *See id.* at 16; *Crossroads*, 788 F.3d at 316.

Accordingly, the Court finds that Corteva has standing to proceed as an intervenor in this case.

### ii.    Intervention as of Right

Turning to the four-factor analysis described above, the Court concludes that Corteva has satisfied each element and is entitled to intervene as a matter of right pursuant to Rule 24(a).

First, Corteva's application to intervene is timely.  They filed their motion to intervene approximately two months after Plaintiffs filed their Complaint and Defendants were served, and before Defendants filed a responsive pleading.  *See Admiral Ins. Co. v. Nat'l Cas. Co.*, 137 F.R.D. 176, 177 (D.D.C. 1991) (CRR) (motions to intervene are generally timely when filed before "the major substantive issues in [the] case" have been "argued or resolved").  The Court finds that Corteva's intervention was timely and will not delay the action or otherwise prejudice the parties.

Second, the Court concludes that Corteva has demonstrated an "interest relating to the property or transaction that is the subject of the action."  Fed. R. Civ. P. 24(a)(2).  The Court's conclusion that a putative intervenor has constitutional standing is "alone sufficient to establish… [its] interest in the property or transaction which is the subject of the action."  *Fund for Animals*, 322 F.3d at 735 (internal citations and quotation marks omitted); *see also Crossroads*, 788 F.3d at 320 ("[S]ince [intervenor] has constitutional standing, it *a fortiori* has an interest relating to the property or transaction which is the subject of the action.") (internal citation and quotation marks omitted); *Mova Pharma. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) ("[Intervenor] need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for the purpose of Rule 24(a).").  Here, Corteva has a clear, legally

protectable interest in this action, specifically an interest in the property that is the subject of this litigation: the registrations for Enlist One and Enlist Duo. *See, e.g.*, *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit"); *Nat. Res. Def. Council v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983) (pesticide industry representatives moving to intervene "can be said to have a substantial and direct interest in the subject" of a lawsuit challenging procedures by which the EPA determined whether their pesticide products "merited continued registration").

Third, the Court finds that Corteva is "so situated that the disposition of the action may as a practical matter impede or impair [its] ability to protect its interest." *Fund for Animals*, 322 F.3d at 735 (quoting Fed. R. Civ. P. 24(a)(2)). In evaluating this prong of Rule 24(a), the Court considers the "practical consequences," of denying intervention, which may include economic consequences. *Id.* at 735. Here, Plaintiffs' requested relief, if granted, would result in the vacatur of the EPA's registration decisions of Enlist One and Enlist Duo and a stop sale order, which would bar Corteva from distributing its Enlist products. This would detrimentally impact Corteva, both through halting such sales, but also by "jeopardiz[ing] the investments it has made in the research, development, registration, production, and marketing of these products," and impacting their reputation. Corteva's Mot. at 12. Corteva has "an interest in the [registrations] at issue, and a decision in their absence would impair their ability to protect that interest." *Friends of Animals v. Ashe*, No. 15-0653 (ABJ), 2015 WL 13672461, at *3 (D.D.C. June 12, 2015).

Fourth, Corteva has sufficiently demonstrated that no existing party to the action will adequately represent its interests. The D.C. Circuit has described this last requirement as "not onerous," *Fund for Animals*, 322 F.3d at 735 (internal citations and quotation marks omitted), and has "often concluded that governmental entities do not adequately represent the interests of

aspiring intervenors." *Crossroads*, 788 F.3d at 314. The Court agrees that Corteva has interests in this action distinct from Defendants EPA and the EPA Administrator, and that Defendants do not adequately represent Corteva's interests. Although Corteva and Defendants may share an interest in upholding the registrations, Corteva points out that it "does not share in EPA's broader objectives to represent the interests of the public at large," while the EPA does not share in Corteva's financial interests, such as "ultimately receiving revenue in the form of sales and royalties from Enlist herbicides." Corteva's Mot. at 14.

Because Corteva has standing and has satisfied Rule 24(a)'s requirements, the Court concludes that it may intervene as a defendant as a matter of right.[2]

### iii.    Conditions on Intervention

"Even where the Court concludes that intervention as a matter of right is appropriate, its inquiry is not necessarily at an end; district courts may impose appropriate conditions or restrictions upon the intervenor's participation in the action." *Forest Cty. Potawatomi Community v. United States*, 317 F.R.D. 6, 15 (D.D.C. 2016) (CKK) (citing *Fund for Animals*, 322 F.3d at 737 n.11) (additional citations omitted). "[A]ny conditions imposed should be designed to ensure the fair, efficacious, and prompt resolution of the litigation." *Id.*; *see, e.g.*, *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 11 n.8 (D.D.C. 2009) (CKK) (granting intervention of right but prohibiting intervenors from raising new claims or collateral issues); *Cty. of San Miguel*, 244 F.R.D. 36, 48 n.17 (D.D.C. 2007) (RBW) (limiting intervention of right to claims within the scope of the complaint).

---

[2] Because the Court concludes that Corteva may intervene as a matter of right, it is unnecessary to determine whether it also entitled to intervene by permissive intervention pursuant to Rule 24(b). *See Am. Horse Prot. Assoc., Inc. v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001) (HHK / JMF) (concluding that movant was entitled to intervene as of right and declining to reach question of permissive intervention).

Plaintiffs here ask the Court to impose certain conditions on Corteva's intervention "[t]o avoid unnecessary duplicative briefing at the expense of the parties and the Court's resources." Pls.' Opp'n at 7.

In order to ensure the fair and efficacious resolution of this action, the Court shall require Corteva, as an intervening party, to comply with the following conditions:

- Corteva shall meet and confer with current Defendants prior to the filing of any motion, responsive filing, or brief to determine whether its positions may be set forth in a consolidated fashion—separate filings by Corteva shall include a certificate of compliance with this requirement and briefly describe the need for separate filings. The parties shall not file separate pleadings that repeat the same arguments;
- Corteva shall confine its arguments to the existing claims in the action and shall not inject new claims or stray into collateral issues;
- Memoranda of points and authorities filed by Corteva in support of or in opposition to any motion in this action shall not, without further leave of the Court and good cause shown, exceed twenty-five (25) pages, and reply memoranda shall not exceed ten (10) pages;
- Corteva shall comply with each of the directives set forth in the [8] Order Establishing Procedures for Cases Assigned to Judge Colleen Kollar-Kotelly; and
- In the event that a motion for summary judgment is filed in this action, Corteva shall file a statement of facts with references to the administrative record consistent with Local Rule LCvR 7(h)(2).

The Court finds that these conditions "strike the appropriate balance between ensuring the expedient resolution of this action while preserving a space for the intervening part[y] to articulate [its] respective positions and interests." *Forest Cty.*, 317 F.R.D. at 16.

\* \* \*

In sum, the Court **GRANTS** Corteva's [12] Motion to Intervene, and Corteva must adhere to the conditions set forth above.

## B. Defendant-Intervenor CropLife

The Court now turns to CropLife's [17] Motion to Intervene.  CropLife seeks to intervene as of right as a defendant in accordance with Federal Rule of Civil Procedure 24(a), or in the

alternative, to permissively intervene in accordance with Rule 24(b).  CropLife's Mot. at 1.  The Court addresses each in turn.

### i. Intervention as of Right

CropLife asserts that they are entitled to intervene as of right in this action because they have made the necessary showing under Rule 24(a).  Plaintiffs disagree and also challenge CropLife's Article III standing to intervene.  The Court begins with a discussion of standing before considering the four-part test for evaluating intervention as of right.  *See Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 191 (D.C. Cir. 2013); *Fund for Animals, Inc.*, 322 F.3d at 732.

### a. Standing

An entity like CropLife can establish standing to sue in two ways.  First, it could sue on its own behalf if it "meet[s] the general standing requirements applied to individuals," *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995), which is referred to as "organizational standing."  Second, it could sue on behalf of its members if it demonstrates "associational standing."  *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).

Plaintiffs seem to challenge whether CropLife has organizational standing.  *See* Pl.'s Opp'n at 8 (explaining only the individual standing requirements), 10–11 (Plaintiffs' discussion of standing not addressing associational standing).  However, CropLife asserted associational standing, CropLife's Mot. at 12, and they point out Plaintiffs' misplaced focus in their reply brief, CropLife's Reply at 7 n.3 ("Plaintiffs mistakenly apply the standard for organizational standing, rather than associational standing.").

To satisfy associational standing, the party must demonstrate that "(1) *at least one* of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested

requires that an individual member of the association participate in the lawsuit." *Sierra Club v. EPA*, 292 F.3d at 898 (emphasis added).

As for the first element, at least one of CropLife's members has standing: Corteva is a member, *see* CropLife's Mot. at 11, and the Court already found that Corteva had standing, *see supra* Part III.A.i.  Plaintiffs explicitly agree to this, stating that "the only member of CropLife who has standing to intervene in this action is Corteva."  Pl.'s Opp'n at 12.  That is sufficient.  *See Am. Chem. Council v. Dep't of Transp.*, 468 F.3d 810, 818–20 (discussing the need to show "at least one member" and identifying a "specific member[]," stating that "the identity of the party suffering an injury in fact must be firmly established").

The second element of associational standing is also satisfied, as CropLife's interest in this litigation is germane to its purpose.  *See* CropLife's Mot. at 11 ("CropLife is a national, private, not-for-profit trade association representing companies that develop and sell pesticide products for agriculture and pest management in the United States.  Its registrant member companies produce the vast majority of the crop protection and other pesticide products registered under FIFRA for use in the United States."); *id.* at 13 ("CropLife's mission is to ensure growers and consumers have the tools they need to protect crops, communities, and ecosystems from the threat of pests, weeds, and diseases, and these interests are inherently reflected by the interests of CropLife's individual members.").

Finally, CropLife meets the third element, as neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit.  *See id.*

Accordingly, the Court finds that CropLife has satisfied associational standing requirements.

The Court now turns to the four elements for intervention as of right under Federal Rule of

Civil Procedure 24(a): "(1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties." *Fund for Animals, Inc.*, 322 F.3d at 731.  The Court will begin by discussing (2) and (4) together, and, finding that CropLife fails to satisfy the standard, will dispose of analyzing the other elements.

### b.  Protectable Interest and Adequate Representation by Other Parties

The second element outlined under Rule 24(a) demands that a prospective intervenor must demonstrate an interest relating to the subject of the action.  *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009).  Additionally, under the fourth element, they must demonstrate that the representation of that interest by existing parties is inadequate.  *See* Fed. R. Civ. P. 24(a)(2).  The Court will consider these two elements together.

Plaintiffs dispute that CropLife has an interest relating to the subject of the action.  *See generally* Pl.'s Opp'n at 8–10. This prerequisite is satisfied "not [by] any interest the applicant can put forward, but only [by] a legally protectable one."  *Roane v. Gonzales*, 269 F.R.D. 1, 3 (D.D.C. 2010) (internal quotation marks and citation omitted).  A legally protectable interest is "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment."  *United States v. Am. Tel. and Tel. Co.*, 642 F.2d 1285, 1291–92 (D.C. Cir. 1980).

It is true that "in most instances," where a putative intervenor meets constitutional standing requirements, it will likely also meet the requirement for a "legally protected" interest under Rule 24(a).  *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 13 n.5 (D.D.C. 2010) (CKK); *Fund for*

*Animals*, 322 F.3d at 735.  Here, the Court has already found that one of CropLife's members (Corteva) has standing such that CropLife meets the requirements for associational standing, which would suggest that CropLife has an interest sufficient to support intervention as a matter of right. *Cf. Wildearth Guardians*, 272 F.R.D. at 16.

But it then follows that where CropLife's associational standing hinges on Corteva's standing, any protectable interest of CropLife then hinges on and overlaps with Corteva's protectable interest, leading to the conclusion that CropLife's interest would be adequately represented by Corteva.

As discussed previously, Corteva has a legally protectable property interest in the registrations of Enlist One and Enlist Duo.  *See supra* Part III.A.ii.  In turn, CropLife has a protectable interest in those registrations as well.  *See* CropLife's Mot. at 15 (referencing an interest stemming from the fact that "members [who] hold… registrations, [] include Corteva, who holds the Enlist One and Enlist Duo registrations").  But this interest will be adequately represented by the presence of Corteva as the sole owner of the registrations at issue and as a party with extensive knowledge of Enlist One, Enlist Duo, glyphosate, 2,4-D, other Enlist products, the Enlist registration process, and more.

The Court acknowledges that an intervenor need only show that the "representation of his interest 'may be' inadequate," and that this burden is "minimal."  *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972).  However, considering CropLife's interest as the property interest in Enlist One and Enlist Duo, Corteva squarely represents that same interest.  This is not a case in which "the overall point of view might be shared" between a trade interest group and an industry party, but where the two parties' interests diverge.  *See Nat. Resources Def. Council v. Costle*, 561 F.2d 904, 913 (D.C. Cir. 1977).  Instead, there is perfect overlap as to this interest.  *See*

*Earthworks v. U.S. Dep't of Interior*, No. 09-1972, 2010 WL 3063139, at *2 (D.D.C. Aug. 3, 2010) (HHK) (considering a trade association's motion to intervene, finding interests adequately represented where other trade associations and companies were already intervenors in the suit, and the only divergence was the size of the member companies they represented).

The Court distills from CropLife's motion three other proffered interests, none of which constitute legally protectable interests in this case. The first of these is that CropLife's members *other than* Corteva hold glyphosate and 2,4-D registrations under FIFRA, which are legally protectable property interests. CropLife's Mot. at 15–16. But those interests are not implicated here; in other words, they are not sufficiently related to the subject of this action so as to satisfy the standard. *See Am. Tel. and Tel. Co.*, 642 F.2d at 1291–92 (A legally protectable interest is "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.").

CropLife contends that if Plaintiffs succeed in this litigation, its members' registrations for products containing glyphosate and 2,4-D—as well as sales from those products, and their investment in research, development, and compliance—are at "immediate risk." CropLife's Reply at 2–3. But this is speculative; if Plaintiffs were to succeed on their claims, there is no trigger that would immediately threaten or remove registrations for other members' products. Rachel Lattimore, Executive Vice President of Legal Affairs, General Counsel, and Secretary of CropLife, whose affidavit was included in support of CropLife's Motion, implicitly acknowledges as such. She states that "[i]f Plaintiffs prevail in this case, CropLife's members' registrations for pesticides containing glyphosate and/or 2,4-D *could* be rendered null and void," not that they *would* be. CropLife's Mot. Ex. A ¶ 19 (emphasis added). The case at hand only concerns the EPA's registrations of Enlist One and Enlist Duo, not any other FIFRA registrations for products with

15

glyphosate and 2,4-D.  *See* Pls.' Opp'n at 9; *see also* Compl. at 99–100 (all requested relief in Plaintiff's Prayer for Relief referring to Enlist One and Enlist Duo).

The fact that glyphosate and 2,4-D are currently undergoing registration review, "a periodic re-review of pesticide active ingredients required under FIFRA," CropLife's Reply at 5, does not change this.  To begin, this review occurs regardless of the instant litigation; it is conducted as part of "a program that re-evaluates all pesticides on a 15-year cycle."  Pls.' Opp'n at 11 n.1.  CropLife argues that if the Court agrees with some of Plaintiffs' allegations—i.e., that the "EPA failed to fully consider or quantify the human health risks associated with glyphosate and 2,4-D, including increased risk of non-Hodgkin lymphoma," Compl. ¶ 311—such a finding "would necessarily impact EPA's ongoing registration review for those active ingredients, thus harming CropLife and its members who maintain registrations for formulations of 2,4-D and glyphosate other than Enlist," CropLife's Reply at 5.  But CropLife "can only speculate that the resolution of this action [may] impact" ongoing or future ESA review and, in turn, that such review would jeopardize other CropLife members' registrations.  *Center for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 340 F.R.D. 1, 4 (D.D.C. 2021) (EGS).  Furthermore, Plaintiffs' allegations all rest on the Enlist products—i.e., that the EPA failed to consider or quantify the human health risks associated with those ingredients *with respect to the EPA's review and registration of the Enlist products*.  To the extent that the Court may consider these allegations in future dispositive motions, CropLife can adequately represent that interest.

Second, CropLife argues that their members also have significant, protectable interests in the development and sales of seed engineered with tolerance to glyphosate and 2,4-D.  CropLife's Mot. at 16.  But this case does not concern such engineered seed, nor does it concern glyphosate and 2,4-D generally.  *See* Pl.'s Opp'n at 9.  To the extent that there is a protectable interest in seed

engineered with tolerance to Enlist products specifically (rather than tolerance to glyphosate and 2,4-D products more generally), *see* CropLife's Reply at 3–4, that interest would be adequately represented by Corteva's presence in this litigation, particularly as Corteva develops and sells seeds containing this Enlist-tolerant trait, *see id.* at 4.

Third and finally, CropLife describes an interest stemming from its members' involvement in the relevant EPA processes. They argue that they have "significant, protectable interests in the considerable efforts invested by its members in participating in the administrative process that culminated in EPA's registration decisions for Enlist One and Enlist Duo and other similar herbicides, including but not limited to extensive work with the agency on its obligations under the Endangered Species Act." CropLife's Mot. at 17–18. CropLife continues that they have a "strong interest in the EPA's implementation of its ESA Workplan." *Id.* at 18.

CropLife provides a specific example of this interest. In their Complaint, Plaintiffs assert that "because EPA decided to approve the registrations of Enlist One and Enlist Duo before completing formal consultation with the [Fish and Wildlife Service], EPA violated its mandatory consultation duties under section 7(a)(2)." Compl. ¶ 356. CropLife argues that this procedure was outlined in the pertinent ESA workplan, which states that the "EPA may need to issue a final registration for a pesticide even if the Agency has *initiated* but *not completed* consultation for the pesticide." CropLife's Reply at 6 (emphasis in CropLife's brief). Therefore, according to CropLife, where the EPA has "signaled that it would use [this workplan] for evaluations of other pesticide products moving forward," Plaintiffs' challenge to the EPA's process would therefore threaten that workplan's viability moving forward, such that other CropLife member's interests would be implicated in processes involving their registrations. *Id.* But again, this interest is not "of such a direct and immediate character that the intervenor will either gain or lose by the direct

legal operation and effect of the judgment." *Am. Tel. and Tel. Co.*, 642 F.2d at 1291–92.  Plaintiffs'

Complaint does "not challenge EPA's past guidance or work plans for its overall ESA compliance

when registering pesticides," Pls.' Opp'n at 10, although the Complaint may reference specific

actions taken related to Enlist products that were allegedly in violation of EPA guidance.

Therefore, if Plaintiffs prevail and the registrations for Enlist One and Enlist Duo are vacated, such

a judgment will not directly and immediately change the EPA's administrative processes including

ESA obligations and work plans.

Accordingly, the Court finds that CropLife does not assert any protectable interests that

will not be adequately represented by Corteva, and therefore CropLife has failed to meet the

requirements for intervention as of right under Rule 24(a).  The Court will now turn to discuss

potential permissive intervention under Rule 24(b).

### ii.    Permissive Intervention

CropLife asserts that, if the Court denies intervention as of right, it should grant permissive

intervention under Rule 24(b).  That rule authorizes permissive intervention for anyone who files

a timely motion and "has a claim or defense that shares with the main action a common question

of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Plaintiffs do not challenge timeliness or whether

CropLife has a shared claim or defense, *see* Pls.' Opp'n at 12–13 (not addressing these issues), so

the Court considers them conceded and will not address such factors but instead moves to the

Court's discretionary considerations.

In considering a motion for permissive intervention, a court assesses whether intervention

will "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P.

24(b)(3).  A court also considers "the nature and extent of the applicant's interests, the degree to

which those interests are adequately represented by other parties, and whether parties seeking

intervention will significantly contribute to… the just and equitable adjudication of the legal question presented." *Aristotle Int'l, Inc. v. NGP Software*, Inc., 714 F. Supp. 2d 1, 18 (D.D.C. 2010) (TFH) (quotations omitted); *see also Ctr. for Biological Diversity v. U.S. E.P.A.*, 274 F.R.D. 305, 313 (D.D.C. 2011) (HHK); *Roane*, 269 F.R.D. at 5 (considering "whether the facts necessary to assert [the intervenor's] claim are essential[ly] the same facts as those necessary to establish [an existing party's] claim").

Plaintiffs argue that "CropLife's intervention will lead to redundant and repetitive arguments, a dramatic expansion of the issues before this Court, and in turn, unduly delay the proceedings of this case because CropLife does not have a legally protectable interest in this case that is not already adequately represented by Federal Defendants and Proposed Intervenor Corteva." Pls.' Opp'n at 13.  The Court agrees.

CropLife will not contribute any additional, necessary information to this litigation.  They explain that they "do[] not seek to file counter or cross claims," but that they "seek[] to defend the validity of the Enlist One and Enlist Duo registrations."  CropLife's Mot. at 23.  So too does Corteva.  CropLife continues that they would "seek to assist this Court by highlighting the overwhelming importance of glyphosate and 2,4-D products to U.S. agriculture, of EPA's science-based review in connection with the registration process, and of EPA's recent work on ESA issues."  *Id.*  These topics lie outside the scope of this litigation and are unnecessary to address the claims presented by Plaintiff; if they end up being relevant, Corteva could adequately present useful information.  CropLife offers an example of additional information they would present, indicating that CropLife member Bayer CropScience "has specific and unique expertise related to the development and production of glyphosate and the seeds designed to be tolerant to glyphosate."  CropLife's Reply at 11 n.4.  But the development and production of glyphosate and glyphosate-

tolerate seeds—other than as related to Enlist One and Enlist Duo, which can be addressed by Corteva—is not at issue in this case. *See Ctr. for Biological Diversity*, 74 F.R.D. at 313 ("Movants argue persuasively that they have substantial expertise and a unique perspective regarding the manufacture and operation of aircraft and the engines thereof. Contrary to movants' assertions, however, aircraft and their engines are not at issue in this case."). CropLife can serve these specific interests and present this information by continuing to participate in EPA processes, as allowed, and, if a chain of speculative events does eventually occur that results in other CropLife members' product registrations being vacated, CropLife could then pursue litigation to protect its interests. While the Court is aware that it is "not enough to deny intervention … because the applicants may vindicate their interests in some later, albeit more burdensome, litigation," *Costle*, 561 F.2d at 910, in the present case before this Court, CropLife's legally protectable interest is adequately represented by another party to this suit. *See In re Endangered Species Act Section 4 Deadline Litigation*, 270 F.R.D. 1, 6–7 (D.D.C. 2010) (EGS).

Any arguments or evidence that CropLife would offer "will be merely cumulative to what [Corteva] will offer, and in that respect it may create unwarranted delay and prejudice to Plaintiffs." *Env'tl Def. Fund v. Thomas*, No. 85-1747, 1985 WL 6050, at *7 (D.D.C. Oct. 29, 1985). The expertise and perspective that CropLife purports to add "have no bearing on the [issues] here in dispute." *See id.* In sum, allowing CropLife to intervene would delay litigation, prejudice Plaintiffs, and result in an inefficient use of judicial resources by broadening scope of litigation beyond Plaintiffs' Complaint, while not significantly contributing to the just and equitable adjudication of the legal question presented.

The Court emphasizes that "permissive intervention is an inherently discretionary enterprise," *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998), and "the

court enjoys considerable discretion under Rule 24(b)," *Envtl. Def. v. Leavitt*, 329 F. Supp. 2d 55, 66 (D.D.C. 2004) (RMU).  The Court, in an exercise of its discretion, finds that CropLife has not satisfied the standard warranting permissive intervention in this case.

*      *      *

The Court, therefore, Court **DENIES** CropLife's [17] Motion to Intervene.

## IV.    CONCLUSION

For the foregoing reasons, the Court shall **GRANT** Corteva's [12] Motion to Intervene. As an intervening party, Corteva shall comply with the conditions set forth in this Memorandum Opinion.  The Court shall also **DENY** CropLife's [17] Motion to Intervene.

An appropriate Order accompanies this Memorandum Opinion.

　　　　　　　　　　　　　 /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge